Filed 5/30/23  P. v. Williams CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B319313 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA094370) |
| v. | |
| JAMES TERRY WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Reversed and remanded for resentencing.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Yun K. Lee, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In March 2022, a jury found defendant James Terry Williams guilty of felony evasion (Veh. Code, § 2800.2). The jury also found true the allegation that the offense involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness. (Cal. Rules of Court, rule 4.421(a)(1)).[1] Defendant contends the trial court erred at sentencing in imposing the upper term based on the aggravating circumstance of "great bodily harm" as well as the court's finding that defendant committed perjury during his testimony at trial. Because we cannot conclude that either factor was found to be true beyond a reasonable doubt by the jury, as required by Penal Code section 1170, subdivision (b)(2) (hereafter section 1170(b)(2)),[2] we agree that the trial court erred in imposing the upper term. Finding the error prejudicial, we reverse the judgment and remand for further proceedings.

## STATEMENT OF FACTS

1. *Prosecution's Evidence*

On March 7, 2020, around 3:00 a.m., California Highway Patrol (CHP) Sergeant Jonathan Yochim was parked in his patrol vehicle monitoring traffic when he observed defendant's vehicle speed by at 115 miles per hour. Sergeant Yochim immediately began his pursuit of defendant.

While in pursuit, Sergeant Yochim observed defendant make a left turn against a red arrow. Sergeant Yochim then activated his overhead

---

[1]     All further references to rules are to the California Rules of Court.

[2]     All further statutory references are to the Penal Code unless otherwise stated.

emergency lights. When defendant did not pull his vehicle over, Sergeant Yochim activated his siren. Defendant turned at the next intersection into an apartment complex. Defendant was aggressively accelerating and braking, attempting to get away from the CHP vehicle.

After a total of three loops around the apartment complex, defendant exited with Sergeant Yochim still in pursuit. Defendant was accelerating at approximately 50 to 60 miles per hour before braking hard and making an aggressive U-turn. Defendant accelerated away from the CHP vehicle, at about 90 miles per hour. At that point, defendant was driving on the wrong side of the roadway and ended up colliding with a parked vehicle.

Matthew Pleitez was sitting in that parked vehicle with two of his friends. At the time of impact, Pleitez hit his head on the windshield, causing the windshield to crack. Pleitez did not "really remember anything after" the crash. He was subsequently taken to the hospital and received stitches on his bottom lip.

After the crash, defendant continued driving another 40 or 50 feet before his vehicle came to a stop. When defendant exited his vehicle, he was arrested by Sergeant Yochim. According to Sergeant Yochim, defendant did not appear to have an altered mental state. Based on defendant's driving, Sergeant Yochim opined that defendant violated multiple Vehicle Code sections, and all these violations would make defendant eligible for a traffic violation point.

2. *Defense Evidence*

In the evening of March 6, 2020, defendant went to visit his friend Latasha Bradley. Defendant was experiencing tooth pain and asked Bradley if she had any pain medication. Bradley directed defendant to the bathroom,

3

and he took one, possibly two, pills from a bottle labeled "pain" medication. At the time, Bradley's bathroom contained the following medications: Tylenol, Oxycodone, Xanax, and Lexapro. Soon after, defendant got "sweaty," felt scared, and "just wanted to get home." Defendant did not recall getting into or out of his vehicle, but remembers driving "a little bit." He testified that he "felt safe" when he saw the CHP officer.

## PROCEDURAL SUMMARY

On March 14, 2022, defendant was charged in a second amended information with one count of felony evasion (Veh. Code, § 2800.2; count 1). The information further alleged that defendant had suffered a prior strike within the meaning of the Three Strikes law (§§ 667, subds. (b)–(j), 1170.12). In response to then-recent amendments to section 1170(b)(2), the prosecution had amended the information to allege the following aggravating circumstances to justify imposition of the upper sentencing term: the crime involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness (rule 4.421(a)(1)); defendant suffered four prior convictions as an adult and sustained petitions in juvenile delinquency proceedings that were numerous and of increasing seriousness (rule 4.421(b)(2)); and defendant served a prior prison and jail term in four cases (rule 4.421(b)(3)).[3]

On March 21, 2022, the jury found defendant guilty of felony evasion and found true that the offense involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty,

---

[3] The information alleged another aggravating circumstance under rule 4.421(a)(7), which was later dismissed at the prosecution's request.

4

viciousness, or callousness. On March 24, 2022, in a bifurcated proceeding, the court found true the prior strike allegation.

The court sentenced defendant to the upper term of three years for felony evasion, doubled for the prior strike, for a total of six years in state prison. In imposing the upper term, the court stated it relied on the fact that (1) the offense involved great bodily harm, and (2) the defendant committed perjury during his testimony.

Defendant filed a timely notice of appeal.

## DISCUSSION

Most convicted felons in California receive a determinant sentence based on a triad sentence structure; with lower, middle, and upper terms. Effective January 1, 2022, our Legislature amended section 1170(b)(2) to allow the trial court to impose the upper term only when there are circumstances in aggravation of the offense that justify a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by the jury or by the court in a bench trial.

Defendant contends the trial court erred in imposing the upper term based on a finding of great bodily harm, given the court had combined four aggravating circumstances under rule 4.421(a)(1)—great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness—into a single jury instruction without giving the jury a unanimity instruction. In response, the Attorney General argues that the aggravating circumstance under rule 4.421(a)(1) merely "lists four ways a single factor could be found true." Alternatively, the Attorney General asserts any error was harmless.

5

Defendant also contends the trial court's finding that defendant committed perjury does not provide an alternative basis to support the upper term because the jury never made such a finding beyond a reasonable doubt. The Attorney General does not dispute that the court's own finding that defendant committed perjury to support the upper term was error, but contends the error was harmless.

1. *Relevant Proceedings*

    A.    *Trial*

Before trial, the court discussed with the parties the new requirement in section 1170(b)(2) for jury findings on the facts underlying aggravating circumstances in order to impose the upper term. The court indicated the prosecution could proceed with any of the "four different options" listed in rule 4.421(a)(1), i.e., that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."

Ultimately, the court instructed the jury with a modified version of CALCRIM No. 3250, providing as follows: "If you find the defendant guilty of the crime charged in count 1, you must then decide whether the People have proved the additional allegation that the defendant's offense involved certain factors relating to the crime. [¶] To prove this allegation, the People must prove that the defendant's offense involved: [¶] 1. Great violence, or; [¶] 2. Great bodily injury, or; [¶] 3. Threat of great bodily injury, or; [¶] 4. Other acts disclosing a high degree of cruelty, viciousness or callousness. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegations have not been proved." The court did not give an unanimity

6

instruction in connection with CALCRIM No. 3250.  The court did not instruct the jury on any other aggravating circumstance.

In closing argument, the deputy district attorney addressed CALCRIM No. 3250.  She stated that the prosecution  sought a jury finding that the offense involved "great violence or great bodily harm or a threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness or callousness" beyond a reasonable doubt.  However, the deputy district attorney explained the prosecution did not "have to prove all of those to you, just one," and the jury could disagree on which "option" to rely on.

The deputy district attorney addressed each of the four options in turn, arguing the jurors could each pick and choose from among them.  She argued the offense involved great violence because defendant was "driving like a maniac with intent and purpose," and he ultimately caused harm.  She then argued the offense involved great bodily harm as the victim hit his head on the windshield, causing him to lose consciousness and require stitches.  However, she then suggested some jurors might doubt the prosecution had met their burden of proof to show great bodily harm because the victim did not have broken bones or require surgery.  She stated, "[The People] don't have to prove [great bodily harm] to you . . . that's not my burden."  She went on to state that some of the jurors "could think there was great bodily harm, some of you could think there's a threat of it.  It could be any one of those."  She contended that a threat of great bodily harm existed for anyone else who was driving or parked on the road, including the victim's two friends.  Lastly, she suggested it was callous for defendant to drive "like a maniac" and engage in a pursuit with Sergeant Yochim.

In closing, defense counsel did not address CALCRIM No. 3250.

B.    *Sentencing*

After the jury reached their verdict, the deputy district attorney filed a sentencing memorandum asking for six years in state prison, citing several aggravating circumstances under rules 4.421(a)(1), (b)(2), and (b)(3).

At the sentencing hearing, the court raised the issue that using the aggravating circumstances under rule 4.421(a)(1) to impose the upper term might violate the prohibition against dual use of facts for punishment purposes.  (See rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"].)  Specifically, the court was concerned that the rule 4.421(a)(1) factors overlapped with the element of driving "with willful or wanton disregard for the safety of persons or property" for felony evasion under Vehicle Code section 2800.2.

Ultimately, the court found that the "seriousness of the injury to the victim" (i.e., great bodily harm) provided a proper basis to impose the upper term.  The victim had hit his head on the windshield, had a loss of memory, and had stitches in his lower lip.  While the "physical injuries didn't seem to be that bad," the court stated, "there was clearly some sort of injury above and beyond."  The court stated it was not relying on the "threat of great bodily harm" or the "high degree of cruelty or callousness," because the court believed those factors were subsumed under the elements of felony evasion.[4]

---

[4]    Similarly, the court determined it could not rely on defendant's criminal history under rule 4.421(b)(2) because the court had already used that history to find his prior strike allegation to be true and thus double his sentence.  (See § 1170, subd. (b)(5) ["[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"].)

8

After imposing the sentence, the court added it was also imposing the upper term based on its "view that defendant willfully committed perjury while on the witness stand." The court acknowledged it did not see this factor in the Rules of Court, "so that may be a wrong factor to consider, but [it] want[ed] the record to be complete" for appellate review.

2. *Analysis*

The Legislature recently passed Senate Bill No. 567 to require factors in aggravation be pled and proved to the trier of fact before those factors may be used to increase a defendant's sentence. (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).) Effective January 1, 2022, the amended statute provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170(b)(2).) This amendment was in effect at the time of defendant's sentencing.

The Rules of Court provide a non-exhaustive list of circumstances in aggravation for purposes of sentencing, including that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Rule 4.421(a)(1).)[5] "[T]he use of the disjunctive 'or' [in rule 4.421(a)(1)] makes

---

[5]     Besides the enumerated circumstances in aggravation listed in rule 4.421, a court may also rely on "[a]ny other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed." (Rule 4.421(c).)

clear that the rule may be satisfied by" any one of the four enumerated types of conduct. (*People v. Duran* (1982) 130 Cal.App.3d 987, 990 ["Clearly, the rule does *not* require great bodily harm. If it did, then the references to great violence and *threat* of great bodily harm would be meaningless"]; see *People v. Wilson* (1982) 135 Cal.App.3d 343, 357, disapproved of on other grounds by *People v. Jones* (1988) 46 Cal.3d 585 ["the term 'viciousness and callousness' under rule 4.421(a)(1) is separate from and not synonymous with 'great bodily harm'"].)

In this case, the jury found true beyond a reasonable doubt that defendant's offense involved: "1. Great violence, *or*; [¶] 2. Great bodily injury, *or*; [¶] 3. Threat of great bodily injury, *or*; [¶] 4. Other acts disclosing a high degree of cruelty, viciousness or callousness." (Italics added.) With these four options so phrased in the disjunctive, we cannot conclude that the jury unanimously determined that the prosecution proved beyond a reasonable doubt the "great bodily injury" option, the one upon which the sentencing court ultimately relied in imposing the upper term. Compounding the problem, the deputy district attorney directed the jury in her closing that they did not have to agree on any one of the four options. Because there was an inadequate showing that the jury found this aggravating factor to be true beyond a reasonable doubt, the court erred in relying upon this circumstance. (§ 1170(b)(2).)

The court further erred in imposing the upper term in part based on its conclusion that defendant perjured himself during his testimony. The jury

---

Thus, the court's finding of defendant's commission of perjury would fall within this catch-all category.

did not make any such finding, and thus the court violated section 1170(b)(2) by relying on this aggravating circumstance.

### 3. *Harmlessness*

Having concluded that the court erred in imposing the upper term based on the jury's blanket true finding on the aggravating circumstances in rule 4.421(a)(1) and the court's own finding that defendant committed perjury, we now turn to whether the error was harmless.

Currently, appellate courts are divided on the prejudice standard that applies when a sentencing court imposes the upper term based on aggravating circumstances that were not all found true by the jury beyond a reasonable doubt. (See, e.g., *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*); *People v. Lopez* (2022) 78 Cal.App.5th 459; *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted Oct. 12, 2022, S275655.) *Flores* set forth the least stringent standard, holding that the sentencing court's error in such a scenario is harmless if at least one of the aggravating factors relied on by the trial court would have unquestionably been found true beyond a reasonable doubt by a jury. (*Flores, supra*, 75 Cal.App.5th at pp. 500–501.) Even under this more lenient standard of prejudice, however, we conclude the error here was not harmless.

We cannot conclude beyond a reasonable doubt that the jury would have found true beyond a reasonable doubt that defendant's offense involved "great bodily harm" under rule 4.421(a)(1). In fact, the prosecution created doubt as to the strength and weight of the evidence of great bodily harm in its closing. The deputy district attorney acknowledged that the jury could easily not find great bodily harm because the victim neither had broken bones nor required surgery for his injury.

11

Likewise, we also cannot conclude beyond a reasonable doubt that the jury would have found true beyond a reasonable doubt that defendant committed perjury. The sentencing court did not indicate a particular part of defendant's testimony in which he perjured himself. Without such clarity, it is "difficult for [us] to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840; see *People v. Wandrey* (2022) 80 Cal.App.5th 962, 983 ["[s]ome degree of speculation would necessarily be required for us to conclude the jury would have agreed with the trial court's evaluation"], review granted on a different ground on Sept. 28, 2022, S275942.) Moreover, even if the jury believed defendant's testimony, it could have found him guilty. Defendant did not deny the facts of the offense, but rather attempted to explain his altered mental state at the time.[6] (Compare *People v. Howard* (1993) 17 Cal.App.4th

[6] Relying on CALCRIM No. 2181, the court instructed the jury on the elements for felony evasion as follows: To prove defendant was guilty of this crime, the People must prove that "[a] peace officer driving a motor vehicle was pursuing the defendant;" and "defendant, who was also driving a motor vehicle, willfully fled from, or tried to elude, the officer, intending to evade the officer." The court then gave the remaining elements in the disjunctive: (1) "[d]uring the pursuit, the defendant drove with willful or wanton disregard for the safety of persons or property;" or "[d]uring the pursuit, the defendant caused damage to property while driving;" or "[d]uring the pursuit, the defendant committed three or more violations, each of which would make the defendant eligible for a traffic violation point;" and there was at least one lighted red lamp visible from the front of the peace officer's vehicle, the defendant either saw or reasonably should have seen the lamp, the peace officer's vehicle was sounding a siren as reasonably necessary, the peace officer's vehicle was distinctively marked, and the peace officer was wearing a distinctive uniform. The court instructed the jury that the defendant committed an act "willfully" if he did it "willingly or on purpose." Even if the jury believed defendant's testimony that he took medication that altered his mental state, and even if they believed he was involuntarily intoxicated, they

999, 1004–1005 [determining that by convicting the defendant the jury "evidently" found he committed perjury after he denied committing sexual assault, supporting use of perjury as an aggravating factor].)

## DISPOSITION

The judgment is reversed and the case is remanded for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STONE, J.*

We concur:


CURREY, Acting P. J.


COLLINS, J.

---

could have nevertheless concluded he had the required mental state necessary to be guilty of this offense.

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.